IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GREENSBORO DIVISION

No. 1 : 25 -CV-417-___



| | |
|---|---|
| Charity Mainville,<br>     Plaintiff,<br><br>     v.<br><br>Eugene Soar, David<br>Yopp, Margaret Eagles, Christine<br>Walczyk, Vartan Davidian III,<br>John Does 1–3,<br>     Defendants | **EMERGENCY MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER (pursuant to Fed. R. Civ. P. 65(b)) and Exceptions to the Anti-Injunction Act, 28 U.S.C. § 2283** |

NOW COMES Plaintiff, Charity Mainville, pro se, and respectfully moves this

Court under Rule 65(b) of the Federal Rules of Civil Procedure for an emergency

ex parte Temporary Restraining Order (TRO) against the named Defendants, to

halt ongoing constitutional violations, ADA-based discrimination, and procedural

misconduct originating from judicial and administrative abuse in North Carolina

state court proceedings.

1

This request falls within the exceptions to the Anti-Injunction Act (AIA), 28 U.S.C. § 2283, which prohibits federal interference with state court actions except where:

1. Authorized by an Act of Congress, or

2. Necessary in aid of this Court's jurisdiction.

Plaintiff invokes both exceptions:

1. The TRO is sought pursuant to 42 U.S.C. § 1983, an Act of Congress expressly authorizing injunctive relief in cases of ongoing constitutional violations (*Mitchum v. Foster*, 407 U.S. 225 (1972)[1]).

2. Continued state administrative interference, including improper denial of appellate filings, concealment of judicial actors, and irregular rulings, is impairing this Court's ability to resolve Plaintiff's federal claims and threatens to render its judgments ineffective, thus satisfying the second AIA exception (*Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 501 F.2d 383 (4th Cir. 1974)[2]; see also *Doe v. Univ. of N.C. Sys.*, No. 1:23-cv-00041-MR (W.D.N.C. Mar. 4, 2024)[3]).

---

[1] *Mitchum v. Foster*, 407 U.S. 225, 237–38 (1972) ("an Act of Congress must 'clearly create a federal right or remedy enforceable in a federal court of equity' that 'could be given its intended scope only by the stay of a state court proceeding'" to qualify as an exception to the AIA).

[2] *Swann v. Charlotte-Mecklenburg Board of Education*, 501 F.2d 383 (4th Cir. 1974) ("once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies").

[3] *Doe v. The University of North Carolina System*, No. 1:23-cv-00041-MR, 2024 WL 941869, at *3 (W.D.N.C. Mar. 4, 2024) (holding that even state entities typically shielded by sovereign immunity may not be immune from injunctive relief where constitutional violations are alleged under § 1983).

## **RELIEF REQUESTED**

Plaintiff requests that this Court:

1. Stay all proceedings in North Carolina state court related to Wake County Case No. 24CV022933 and appellate case P25-113, pursuant to the Anti-Injunction Act exceptions, to prevent further harm and interference with Plaintiff's federal rights.[4] In addition to the general stay of proceedings, and to ensure complete compliance, specifically enjoin Defendants from:

    a. Accepting or granting procedurally improper or untimely motions;

    b. Entering or allowing orders without proper judicial oversight;

    c. Interfering with Plaintiff's appellate filings or finalization of the Record on Appeal.

2. Order the Deputy Clerk, or a Chief Staff Attorney of the North Carolina Court of Appeals (other than Defendant Soar) to disclose the names of the judicial officers who ruled on all orders entered under appellate case number P25-113, including how they ruled, which orders they participated in, and any other members of the panel or court personnel involved in the review or issuance of those orders. This disclosure shall:

    a. Be provided within 48 hours of this Order;

    b. Be certified under penalty of perjury;

---

[4] See *Supplemental Complaint for Violation of Civil Rights* ("Supp. Compl.") § III, pp. 7–52.

c. Include all relevant documentation supporting the disclosed information; and

d. Be filed directly with this Court with copies provided to all parties.

3. Prohibit any further reliance on orders that:

a. Were entered without verifiable judicial review;

b. Were issued outside applicable procedural deadlines;

c. Are currently being used to obstruct Plaintiff's ability to complete the appellate process.

4. Require that any further actions related to Plaintiff's appellate case be supervised by a duly assigned judicial panel with proper transparency.

5. Grant such other relief as the Court deems just and necessary to prevent irreparable harm.

## **GROUNDS FOR RELIEF**

1. Plaintiff is suffering ongoing irreparable harm as a result of retaliatory and procedurally abusive conduct that undermines her constitutional rights to due process, access to courts, and protection under the Americans with Disabilities Act. The pattern of irregular rulings, false statements by opposing counsel, and denial of transparency in appellate decision-making constitutes unlawful conduct that cannot be remedied solely through the state system. (Supp. Compl. § III, pp. 7 – 52.)

4

2. Plaintiff has disclosed multiple documented disabilities, including Generalized Anxiety Disorder, Complex PTSD (C-PTSD), and ADHD. She has repeatedly requested reasonable accommodations in connection with these conditions, including by filing a motion for Exceptional Case Status pursuant to Rule 2.1 of the North Carolina General Rules of Practice (Supp. Compl. § III, p. 11) and an Ex Parte Temporary Restraining Order under Rule 65(b). (Ex. A). Defendant Eagles denied both requests without providing accurate legal reasoning or, in some instances, any reasoning at all. Defendant Yopp, who was previously aware of Plaintiff's disabilities during the tenancy and litigation period, has continued to exploit procedural mechanisms in a manner that exacerbates Plaintiff's condition. Rather than engage in fair adjudication, Defendants have used the state court process to escalate harm, retaliate against Plaintiff's protected activity, and obstruct meaningful access to relief. This sustained pattern of conduct violates both the Americans with Disabilities Act and Plaintiff's constitutional rights. (Supp. Compl. § III, pp. 13 - 52)

3. Plaintiff has diligently pursued all available state and administrative remedies, including filing objections, motions, and notices outlining procedural violations, an interlocutory appeal, a writ of prohibition, and a petition for discretionary review before the North Carolina Supreme Court. Each of these avenues has been obstructed or prejudiced by improper

5

filings from opposing counsel and procedural interference by both the trial and appellate courts—specifically through the conduct of Defendant Soar, Clerk of the North Carolina Court of Appeals. (Supp. Compl. § III, pp. 28–52.)

4. In her latest attempt to request judicial transparency, Plaintiff filed a Motion to Identify the Judicial Panel (Ex. B) after Defendant Soar refused both informal requests and official channels. The Court dismissed this motion (Ex. C) rather than denying it, effectively circumventing the legal standing of her request, despite evidence that the Court of Appeals regularly releases judge names contrary to their claimed policy. These failures have rendered state remedies ineffective and further support the necessity of federal intervention. With this continued pattern occurring with more improper orders after her request, it is essential to compel disclosure of all judicial officers who ruled on orders under appellate case number P25-113, including how they ruled and which orders they participated in. Without these names, Plaintiff's ability to pursue relief accurately is delayed, as she cannot properly name judges in her § 1983 claim and must instead list them as John Does. As demonstrated in Plaintiff's motion, (Ex. B) these names are already released in other contexts, and no governing law or rule requires confidentiality; therefore, Plaintiff should not have to wait for discovery to receive this information.

5. These actions have caused—and continue to cause—Plaintiff irreparable harm, including the exacerbation of diagnosed mental health conditions, emotional distress, and sustained interference with her federally protected civil and constitutional rights for over nine consecutive months. Plaintiff has also experienced significant financial harm due to the time and energy required to defend against meritless and retaliatory litigation, severely limiting her ability to maintain consistent work. The resulting chronic stress has triggered physical symptoms and destabilized her overall well-being. Since relocating, Plaintiff has been unable to build a support system and remains isolated, living in constant fear of ongoing retaliation and escalating judicial abuse. (*See Complaint for Violation of Civil Rights* § IV, p. 5.)

6. Plaintiff is likely to succeed on the merits of her claims under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act, due to the detailed documentation of constitutional and procedural violations and the substantial supporting evidence. The court record reflects a consistent pattern of misconduct, retaliation, and denial of access that is well-supported by court filings, correspondence, and Plaintiff's own judicial conduct log.

7. Immediate judicial intervention is necessary due to imminent deadlines that threaten Plaintiff's appellate rights. Defendant Eagles exceeded her

7

authority by striking Plaintiff's supplemental record on appeal—a power reserved solely for the Court of Appeals—and concealed that order until after the appellate panel ruled. (Ex. D) Plaintiff now faces a mandatory 15-day deadline under N.C. R. App. P. 12(a) to docket a settled record, while Defendant Yopp continues to taint that record with impermissible filings. Defendant Soar's repeated refusals to identify the judicial panel or provide clear docketing guidance demonstrate ongoing procedural manipulation. Until the Court of Appeals clarifies which rule governs record settlement and identifies who bears responsibility for these violations, (Ex. E) Plaintiff's interlocutory appeal remains in limbo, risking irreversible loss of evidence documenting judicial misconduct. Relief is therefore necessary to preserve the status quo, prevent the filing of a compromised record, and avert irreparable harm to Plaintiff's substantive rights under N.C. Gen. Stat. § 1-294.

8. Plaintiff initially filed this matter in the Eastern District of North Carolina on May 15, 2025, and included a Motion for Emergency Temporary Restraining Order. Although the clerk's office informally suggested the case may be better suited to the Middle District, Plaintiff filed in Raleigh due to immediate time constraints and the urgency of the requested relief. The assigned judge, however, denied the TRO after four days without addressing the key factual allegations, without reference to the ADA claim,

8

and singled out Defendant Yopp—implying that Plaintiff's request was retaliatory in nature. Plaintiff has since learned that the judge is a long-standing professor at Campbell Law School and held that position during the period when Defendant Yopp attended (2012–2014), raising concerns of potential institutional entanglement or undisclosed familiarity. Plaintiff has taken appropriate steps to preserve the record of procedural concerns arising from the prior filing, including submitting a judicial conduct complaint through the proper channels. This is noted solely to underscore the seriousness of the access-to-court and impartiality concerns, not to seek review or intervention by this Court. To preserve judicial neutrality and avoid further procedural prejudice, Plaintiff voluntarily dismissed the Eastern District case and now refiles in the Middle District, where she resides and continues to experience the ongoing effects of the violations.

9. Plaintiff is not requesting this Court to compel any state court to act, nor to review or reverse any state ruling. Relief is narrowly tailored to prevent ongoing constitutional violations and ensure preservation of appellate rights in light of retaliatory conduct by named Defendants.

10. This Court has the authority and obligation to intervene under Rule 65(b) and 28 U.S.C. § 2283 to preserve Plaintiff's federal rights and prevent further abuse of process.

Case 1:25-cv-00417-WO-LPA    Document 3    Filed 05/23/25    Page 9 of 36

## THE PUBLIC INTEREST FAVORS RELIEF

The public interest strongly supports judicial integrity, constitutional compliance, and the protection of court access for all litigants, especially those with disabilities. Federal intervention is warranted to prevent further erosion of public trust in the judicial process—particularly where the state court and its officers have engaged in irregular rulings, procedural manipulation, and ADA noncompliance. Preserving the ability of pro se litigants to meaningfully engage in appellate processes is a matter of public concern, and relief in this case would reinforce the core democratic principle that the courts remain open and accountable to all.

## REQUEST FOR EX PARTE RELIEF

Pursuant to Rule 65(b)(1) of the Federal Rules of Civil Procedure, Plaintiff respectfully requests that this motion be considered on an ex parte basis. Given the imminent and ongoing harm—including a mandatory 15-day deadline to submit the Record on Appeal expiring on May 27, 2025—and the pattern of retaliatory conduct detailed herein, immediate judicial review is necessary to prevent further prejudice. The Court should grant this motion without notice because:

1. Providing advance notice to Defendants would likely trigger additional procedural obstruction and potentially damaging judicial orders before this

Case 1:25-cv-00417-WO-LPA    Document 3    Filed 05/23/25    Page 10 of 36

Court could intervene, as evidenced by the pattern of coordinated responses to Plaintiff's previous filings. (Supp. Compl. § III, pp. 28-29, 40-41);

2. The rapidly approaching appellate deadline creates a genuine emergency that cannot await standard notice periods; and

3. Plaintiff's documented disabilities are being exacerbated by each additional procedural hurdle, as verified under penalty of perjury below.

4. In a prior filing in the Eastern District, Plaintiff submitted a similar motion ex parte, but has reason to believe that confidentiality may have been compromised, as the judge's ruling singled out a non-judicial defendant by name and mischaracterized the filing in a manner inconsistent with neutral review. This heightens Plaintiff's concern that advance notice in this matter could again expose her to coordinated interference or retaliatory action before this Court can intervene.

Plaintiff will serve this motion along with the summonses upon issuance, in compliance with Rule 65(b)(1)(B), and is prepared to post any reasonable security the Court may require under Rule 65(c).

WHEREFORE, Plaintiff respectfully requests that this Court enter an immediate Temporary Restraining Order and, if necessary, schedule a preliminary injunction hearing to prevent further violations of her constitutional and statutory rights, and to preserve the integrity of her pending federal claims.

11

Plaintiff requests that the Temporary Restraining Order remain in effect for fourteen (14) days pursuant to Fed. R. Civ. P. 65(b)(2), or such longer period as the Court deems appropriate upon a showing of good cause or by agreement of the parties.

## **<u>VERIFICATION</u>**

I declare under penalty of perjury that the facts stated in this motion are true and based on my personal knowledge.

Respectfully submitted this the 23rd day of May, 2025.

Charity Mainville
Plaintiff, Pro Se
2025 Watchorn St, Apt 504
Durham, NC 27703
(608)215-6654
camainville@gmail.com

12

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Complaint for Violation of Civil Rights and Emergency Motion for Ex Parte Temporary Restraining Order will be served, along with the summons, upon Defendants Eugene H. Soar, David M. Yopp, Margaret P. Eagles, Christine M. Walczyk, and Vartan A. Davidian III by Wake County Sheriff's Department as requested, in accordance with Fed. R. Civ. P. 4.

This the 23rd day of May, 2025.

Charity Mainville
Plaintiff, Pro Se
2025 Watchorn St, Apt 504
Durham, NC 27703
(608)215-6654
camainville@gmail.com

13

FILED
DATE:May 12, 2025
TIME:9:22:50 AM
WAKE COUNTY
CLERK OF SUPERIOR COURT
BY: E. Bollers

EXHIBIT A

STATE OF NORTH CAROLINA
COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
DISTRICT COURT DIVISION
FILE NO. 24-CV-022933-910

CHARITY MAINVILLE,                    )
                                      )
        Plaintiff,                    )
                                      )
            vs.                       )
                                      )
ANNA DE SANTIS and                    )
DE SANTIS RENTALS, LLC,               )
                                      )
        Defendant.                    )

**EX PARTE MOTION FOR
TEMPORARY RESTRAINING ORDER
UNDER RULE 65(b)**

NOW COMES the Plaintiff, Charity Mainville, proceeding pro se, and respectfully moves this

Honorable Court for a Temporary Restraining Order and Preliminary Injunction pursuant to N.C.

Gen. Stat. § 1-485 and Rule 65 of the North Carolina Rules of Civil Procedure. In support of this

Motion, Plaintiff shows the Court the following:

## INTRODUCTION

Plaintiff seeks emergency injunctive relief to enforce the automatic stay that took effect upon the

filing of her interlocutory appeal on February 10, 2025, as supplemented on February 19 and

February 28, 2025, pursuant to N.C. Gen. Stat. § 1-294.

Despite this statutory automatic stay, proceedings have improperly continued in this Court,

including an improper hearing, orders that appear to involve ex parte communications between

Defendants' counsel and the Court, and multiple filings by defendants with each one effectively

violation the stay.

1

The Court's refusal to recognize the automatic stay and continuing procedural irregularities threaten substantial rights of the Plaintiff, violate due process, and undermine the integrity of the judicial process.

Plaintiff previously attempted to seek federal relief regarding these matters, but was informed that federal courts cannot interfere with state court proceedings absent a direct action against the court.

## STATEMENT OF FACTS

**1. Procedural History**

1. This action originated as a small claims case filed on July 22, 2024 for breach of warranty of habitability, misrepresentation under the North Carolina Unfair and Deceptive Trade Practices Act, and subsequently included a claim for defamation.

2. After adverse rulings in small claims court and court-ordered arbitration despite the provided evidence, Plaintiff properly filed for a trial de novo in District Court.

3. Between January 23 and January 30, 2025, the Court entered several procedurally flawed orders that violated Plaintiff's substantial rights, prompting her interlocutory appeal filed on February 10, 2025.

4. Plaintiff's appeal challenges multiple orders including:

   a. Order to Continue Exceptional Case Status and Default Judgement (January 23 2025).

   b. Order Granting Motion for Extension of Time to File Responsive Pleadings and Motions granted ex parte (January 24, 2025).

2

    c.  Order Granting Motion to Withdraw As Counsel and Denying and Rendering Moot Plaintiff's Motion to Compel Answer and Emergency Motion to Vacate Orders (January 30, 2025).

    d.  Order Granting Extension of Time for Defendant's Response to Plaintiff's First Set of Interrogatories and Request for Production of Documents (January 30, 2025).

    e.  Amended Order denied ex parte (January 30, 2025).

    f.  Order Denying Plaintiff's request for an Automatic Stay & Denying Defendant's Motion to Strike Plaintiff's Amended Complaint (February 17, 2025).

    g.  Order for Extension of Time on Requests for Admission granted ex parte (27 February 2025).

5. Despite Plaintiff's properly filed notice of appeal and explicit invocation of the automatic stay under N.C. Gen. Stat. § 1-294, the Court has continued proceedings, including Judge Davidian's February 17, 2025 order that mischaracterized this action as a summary ejectment proceeding rather than a habitability claim.

## II. Evidence of Ex Parte Communications

On February 27, 2025, the Order for Extension of Time on Requests for Admission stated:

> *"Due to the numerous filings in this case, including appeals to the Court of Appeals, this motion was not properly heard until today."*

In fact, no hearing occurred. The order was entered one minute before the court accepted Defendants' procedurally improper "Objection" to the Notice of Deemed Admissions—filed during an active automatic stay. The objection itself was timestamped approximately 30 minutes prior to the order, indicating the judge may have reviewed it before it was formally accepted on

3

the docket. The order also failed to address Plaintiff's pending Motion to Strike, ignored the defective service, and falsely stated that a hearing took place. These circumstances strongly suggest potential ex parte communication or off-record coordination between the Court and opposing counsel.

On April 28, 2025, there was a scheduled hearing regarding judicial settlement of the record on appeal. Plaintiff logged on remotely promptly on time. Defendants' counsel appeared in person at the courthouse but was absent from camera view for approximately 15 minutes while the judge's camera was also turned off prior to official proceedings.

When Judge's camera was activated, Defendants' counsel appeared shortly after. The judge cited technical issues.

During the hearing Defendants' counsel made statements demonstrating knowledge of the judge's personal computer issues, stating words to the effect of: "I forwarded an email to your clerk with the ShareFile link for the proposed settled record and supplementals, but I know you've been having issues with your personal computer, so I'm not sure if you saw it."

This statement strongly indicates private communications outside the presence of Plaintiff and off the record, constituting improper ex parte contact regarding a pending matter.

### III. Interference with Appellate Process

The court has failed to issue its ruling on judicial settlement of the record by the promised deadline, which was to be on April 29, 2025.

Defendants' counsel contacted Plaintiff with a proposed settlement offer just 10 minutes before the court's promised ruling on judicial settlement of the record was due, despite Plaintiff's prior written notice that she would not engage in any state-related settlement negotiations. This contact

4

occurred during an active automatic stay and constitutes an improper attempt to circumvent the appellate process through direct party pressure.

Plaintiff denied this due to the automatic stay on April 30, 2025. Defendants' counsel then filed a response to Plaintiff's Petition for Discretionary Review with the North Carolina Supreme Court on April 30, 2025, containing numerous misrepresentations about both factual matters and speaking for the Court of Appeals' and trial court on their positions.

## LEGAL GROUNDS FOR RELIEF

### I. Plaintiff Is Likely to Succeed on the Merits

1. N.C. Gen. Stat. § 1-294 clearly provides that *"when an appeal is perfected as provided by this Article it stays all further proceedings in the court below upon the judgment appealed from, or upon the matter embraced therein, unless otherwise provided by the Rules of Appellate Procedure; but the court below may proceed upon any other matter included in the action and not affected by the judgment appealed from."* This statutory language leaves no room for judicial discretion when a proper appeal has been filed.

2. Plaintiff's interlocutory appeal notice properly identified substantial rights affected:

    a. The right to due process and a fair hearing;

    b. The right to proper notice and an opportunity to be heard;

    c. The right to timely resolution of an aged case;

    d. The right to proper procedural safeguards in court orders;

    e. The right to an impartial tribunal and fair judicial process.

3. The Court has refused to acknowledge Plaintiff's prior written notice, and Defendants' counsel now claims that such notice is insufficient—implying that Plaintiff must file a

5

full appellate brief at the trial level to preserve her rights. Plaintiff intentionally refrained from detailing every violation in the trial court record, reserving that information for the appellate process to prevent undue exposure of appellate arguments in a docket already influenced by improper filings. However, this restraint has proven unwarranted, as the Court's continued refusal to act is compounding procedural harm.

4. Plaintiff is now placed under an undue burden to repeatedly "prove" her claims merely to avoid ongoing harm, reflecting disparate and discriminatory treatment of a pro se litigant who has complied fully with procedural rules and filing standards. This is particularly troubling given that, with the exception of one, every filing submitted by Defendants' counsel has been procedurally improper, in violation of applicable rules, or has contained false or misleading statements.

5. A summary of the relevant facts to violations of her substantial rights is below:

    a. Order to Continue Exceptional Case Status and Default Judgement (January 23 2025).

        i. Violated Plaintiff's right to due process by granting an improper oral motion to continue without written filing

        ii. Denied Plaintiff's right to be heard when attempting to seek clarification

        iii. Violated Rule 6(d) of the N.C. Rules of Civil Procedure requiring written motions

        iv. Denied Plaintiff's right to timely resolution of her Default Judgment motion on an aged case

        v. Contained factual misrepresentations about Defendants' counsel statements

6

      vi. Was decided by Judge Baker who lacked authority to rule on the Motion for Exceptional Case Status

      vii. Improperly continued a Default Judgment hearing when Defendants failed to file a motion to set aside judgment as required under Rule 55(d).

b. Order Granting Motion for Extension of Time to File Responsive Pleadings and Motions granted ex parte (January 24, 2025).

      i. Granted ex parte with no mention of Plaintiff's filed objection

      ii. Filed without required cover sheet notifying court of Plaintiff's position

      iii. Violated Local Rule 12.2 by appearing as a consent order despite Plaintiff's explicit denial

      iv. Extended pleading time without good cause shown as required by Rule 6(b)

      v. Created judicial prejudice by granting extension 10 days before trial date

      vi. Backdated order creating procedural irregularity

      vii. Directly interfered with Plaintiff's right to timely resolution in a trial de novo proceeding

c. Order Granting Motion to Withdraw As Counsel and Denying and Rendering Moot Plaintiff's Motion to Compel Answer and Emergency Motion to Vacate Orders (January 30, 2025).

      i. Violated N.C. Gen. Stat. § 84-5 by allowing withdrawal without secured replacement counsel for LLC

7

    ii. Allowed counsel to withdraw without justifiable cause based on needing "more experienced" representation - an admission of Rule 1.1 violation of professional conduct

    iii. Failed to address Plaintiff's motion for sanctions against opposing counsel

    iv. Allowed withdrawal without requiring disclosure of replacement counsel identity

    v. Improperly blamed Plaintiff for case delays for exercising her statutory right to appeal

    vi. Improperly made judicial statements constituting legal advice to pro se litigant

    vii. Court stated an extension is automatically granted with no permission needed violating local Rule 12.2 and rule 6(b)

    viii. Allowed to be granted on misleading and contradictory statements by opposing counsel

d. Order Granting Extension of Time for Defendant's Response to Plaintiff's First Set of Interrogatories and Request for Production of Documents (January 30, 2025).

    i. Granted without any cause shown as required for discovery extensions

    ii. Extended discovery deadline past trial date without justification

    iii. Created direct prejudice by forcing Plaintiff to either proceed without discovery or continue trial

    iv. Failed to address Plaintiff's proper objections

8

    v. Used identical language from Defendants' proposed order indicating lack of independent judicial consideration.

e. Amended Rule 2.1 Order (January 30, 2025):

    i. Contained material misrepresentations of the record by referencing withdrawn motions

    ii. Implied a violation of Rule 15a by not clarifying the record

    iii. Failed to address Plaintiff's request for reasonable accommodations based on disability

    iv. Contradicted other judicial rulings approving counsel withdrawal for "more experienced" representation

    v. Failed to address bias concerns raised in the motion

f. Order Denying Plaintiff's request for an Automatic Stay & Denying Defendant's Motion to Strike Plaintiff's Amended Complaint (February 17, 2025)

    i. Violating the automatic stay that was already in effect

    ii. Proceeded on the basis of an oral objection, despite the requirement that objections be made in written form under applicable procedural rules

    iii. Mischaracterizing the action as a summary ejectment rather than a habitability case

    iv. Overreaching jurisdiction by determining substantial rights while appeal was pending

    v. Improperly extended the deadline to file an answer for a second time, granting an additional 28 days beyond the 20-day limit set by rule, effectively allowing Defendants a total of 90 days to respond to a pleading

in a trial de novo—without justification and in clear violation of procedural timeframes.

    vi.  Retroactively justifying removal of trial from calendar

    vii.  Ruling on a procedurally defective motion with wrong caption

    viii.  Issued rulings exclusively on Defendants' motions, while ignoring or failing to address multiple properly filed motions by Plaintiff, demonstrating a pattern of one-sided adjudication.

  g.  Order for Extension of Time on Requests for Admission (February 27, 2025)

    i.  Failed to address Plaintiff's pending motion to strike the extension request

    ii.  Ignored the defective certificate of service in violation of Rule 5

    iii.  Created a fiction of a non-existent hearing to justify its delayed issuance

    iv.  Improperly placed blame on Plaintiff's legitimate appeal for causing delay

6. The trial court's collective actions have systematically violated Plaintiff's statutory and constitutional rights to due process, fair hearing, and judicial impartiality. These are not mere procedural inconveniences but affect the fundamental fairness of these proceedings.

7. Plaintiff has diligently objected to each improper action, filed appropriate motions to correct procedural errors, and properly invoked appellate review when her substantial rights were affected.

8. The continued proceedings in this Court directly violate the automatic stay provisions of N.C. Gen. Stat. § 1-294, making Plaintiff likely to succeed on the merits of this motion.

**II. Plaintiff Will Suffer Irreparable Harm Without Injunctive Relief**

1. Without immediate injunctive relief, Plaintiff will continue to suffer irreparable harm through:

10

    a. Violation of statutory procedural rights that cannot be remedied by monetary damages;

    b. Being forced to litigate in a tribunal demonstrating bias and engaging in ex parte communications;

    c. Interference with her ability to properly pursue her appeal through obstruction of the record settlement process;

    d. Continuing damage to her case through procedurally flawed rulings made without jurisdiction.

    e. The harm to Plaintiff's due process rights cannot be adequately remedied after the fact, as each additional proceeding conducted in violation of the automatic stay compounds the constitutional violations.

## III. The Balance of Equities Favors the Plaintiff

1. Granting the requested TRO merely enforces existing law by recognizing the automatic stay that should already be in effect under N.C. Gen. Stat. § 1-294.

2. Defendants will suffer no prejudice from a pause in proceedings while the interlocutory appeal is resolved, as the case will still proceed once jurisdictional issues are clarified.

3. In contrast, Plaintiff will suffer severe prejudice if forced to continue litigating in a procedurally irregular environment where her substantial rights are violated and where ex parte communications appear to be influencing judicial decisions.

4. Plaintiff has diligently pursued proper procedural channels, filing timely objections to improper proceedings and seeking relief through appropriate legal means, while Defendants have engaged in delay tactics and procedural gamesmanship.

### IV. The Public Interest Favors Injunctive Relief

1. The public has a strong interest in maintaining the integrity of the judicial system, preventing ex parte communications, and ensuring that statutory protections for litigants are honored.

2. Enforcing the automatic stay provisions of N.C. Gen. Stat. § 1-294 upholds the rule of law and prevents courts from exceeding their jurisdiction while matters are under appellate review.

3. Allowing courts to ignore automatic stay provisions would undermine appellate review mechanisms and create a dangerous precedent that would threaten due process for all litigants.

4. Plaintiff has been forced to file for reasonable accommodations to avoid being abused by the Court and opposing parties, despite informing the Court four times previously of her needs, further demonstrating the public interest in protecting vulnerable litigants.

5. Failure to grant this relief will constitute a continuing violation of Plaintiff's rights under Title II of the Americans with Disabilities Act (42 U.S.C. § 12132) and Section 504 of the Rehabilitation Act (29 U.S.C. § 794), due to the Court's ongoing discriminatory treatment, failure to provide equal access to justice, and refusal to mitigate undue burden placed on a pro se litigant with a known disability.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

1. Issue an immediate Temporary Restraining Order:

    a. Recognizing and enforcing the automatic stay under N.C. Gen. Stat. § 1-294;

    b. Prohibiting any further proceedings in this matter until the pending interlocutory appeal is resolved;

    c. Prohibiting any ex parte communications between the Court and Defendants' counsel;

    d. Requiring that all communications regarding this matter be properly served on all parties.

2. Issue a declaratory ruling that the automatic stay under N.C. Gen. Stat. § 1-294 has been in effect since February 10, 2025;

3. Issue an order to settle the record on appeal strictly in accordance with Rule 11(c) of the North Carolina Rules of Appellate Procedure, without requiring Plaintiff to seek further intervention from the appellate courts;

4. Order Defendants' counsel to correct any misrepresentations made to appellate courts regarding the status of this case or the appellate proceedings;

5. Order an investigation into potential ex parte communications that have occurred in this case;

6. Grant such other and further relief as this Court deems just and proper.

## VERIFICATION

Plaintiff affirms under penalty of perjury that the factual statements contained in this motion are true and based on personal knowledge. Due to time constraints, exhibits have not been attached, but all referenced filings, motions, and transcripts are part of the court record or can be provided upon request. Plaintiff is willing to supplement this motion with supporting documentation if the Court requires specific materials.

Respectfully submitted this 2nd day of May, 2025.

Charity Mainville
Plaintiff, Pro Se
2025 Watchorn St, Apt 504
Durham, NC 27703
(608) 215-6654
camainville@gmail.com

5/12/2025 9:17:23 AM

the motion for Temporary
Restraining Order is DENIED

5/12/2025

14

No. P25-113                                    TENTH JUDICIAL DISTRICT

## NORTH CAROLINA COURT OF APPEALS

************************************************

| | |
|---|---|
| CHARITY MAINVILLE,<br>    Plaintiff-Petitioner, | ) ) ) |
| v. | ) ) |
| THE HONORABLE VARTAN A.<br>DAVIDIAN III,<br>Judicial Respondent, | ) ) ) |
| And | ) ) |
| ANNA DE SANTIS and<br>DE SANTIS RENTALS, LLC,<br>Defendants-Respondents | ) ) ) ) |

**FROM WAKE COUNTY**
**24-CV-022933-910**

************************************************

## MOTION TO IDENTIFY JUDICIAL PANEL PURSUANT TO N.C. PUBLIC RECORDS LAW

************************************************

TO THE HONORABLE NORTH CAROLINA COURT OF APPEALS:

NOW COMES the Petitioner, Charity Mainville, proceeding pro se, and respectfully

moves this Court to disclose the names of the judges who ruled on the following four

(4) orders entered under this docket:

1. April 10, 2025: Granting Defendant's retroactive extension and directing

settlement under Rule 11(c);

16

2. April 17, 2025: Denying Petitioner's Writ of Prohibition;

3. April 17, 2025: Denying Petitioner's Motion for Sanctions;

4. May 5, 2025: Denying Petitioner's Emergency Motion for Clarification and Protection of the Appellate Record.

## FACTUAL BACKGROUND

On May 5, 2025, Petitioner contacted the Clerk's Office to request the names of the judges who ruled on the above-referenced orders. She was informed that judge names are not released on motions, and that for petitions, she would have to wait 90 days pursuant to an unspecified internal policy.

On May 6, 2025, Petitioner filed a public records request with the North Carolina Administrative Office of the Courts (AOC), as no law, rule, or official guidance substantiates such a "90-day policy."

On May 7, 2025, the AOC responded, stating that it is *"not the custodian of the records you have requested."* This indicates that the Appellate Clerk of Court is the sole point of access for the information, while simultaneously being the individual obstructing its release.

Also on May 7, 2025, Petitioner again contacted the Clerk's Office to request a formal copy of the policy. The staff member acknowledged that the rule was not legally restricted but said Petitioner would need to speak directly with Clerk Eugene Soar. She took a message and stated that Mr. Soar would return the call.

Later that day—coincidentally timed with the opposing party's improper motion filing—Petitioner received an anonymous, auto-formatted email stating:

> *"Please see the below press release for information announcing the 90-day delay in releasing the names of the judges who ruled on a petition filed in the Court of Appeals. The names of judges ruling on motions are not released."*

The email included a link to a press release dated almost three years earlier.

Petitioner called the Clerk's Office again to identify who sent the email and to inquire how a three-year-old press release could serve as current policy. The staff member stated that they never send automated emails like that, appeared surprised by its content, and suggested it might be spam. When Petitioner read the message aloud, she was again told to ignore it.

On May 9, 2025, Petitioner reached Clerk Eugene Soar directly. He confirmed that he had authored the anonymous procedural email and reaffirmed the existence of a "90-day policy." When Petitioner asked what law or rule governed this policy, Mr. Soar became hostile and told her to "go find one." After Petitioner cited the North Carolina Public Records Act, he refused to offer any explanation and instead instructed her to "file a public records request." When she explained that the Court of Appeals provides no online form, email, or portal to submit such a request, he told her to "mail a letter." This instruction, unlike nearly every other agency in North Carolina—including the AOC—was plainly designed to delay or prevent access.

18

## LEGAL BASIS FOR DISCLOSURE

The Public Records Act, N.C. Gen. Stat. § 132-1 et seq., defines public records to include documents "made or received pursuant to law or ordinance in connection with the transaction of public business." No statutory exemption authorizes withholding the identities of judges who rule on final orders—particularly orders that affect appellate procedure and jurisdiction. This denial of access further contradicts the Court's statutory obligations under N.C. Gen. Stat. § 132-1 and underscores the urgent need for direct judicial identification.

Moreover, this purported policy is inconsistently applied. On or around March 15, 2025, Clerk Eugene Soar publicly disclosed the names of the panel judges in COA25-181, a politically sensitive election appeal involving Jefferson Griffin and Justice Allison Riggs. *The News & Observer*[1] reported that the Court identified the panel in advance of the March 21 hearing, including the judges' names and political affiliations. This directly contradicts the claim that judge names cannot be disclosed.

Petitioner is seeking judicial identities due to ongoing concerns about potential conflicts of interest and procedural manipulation. The identity of the judges involved in the above-referenced orders is necessary to preserve the integrity of appellate review and ensure impartiality.

---

[1] *See* Kyle Ingram, *NC high court election case heads to three-judge panel, 2 Republicans and 1 Democrat, News & Observer* (Mar. 15, 2025), available at: https://www.newsobserver.com/news/politics-government/article301558294.html.

Petitioner notes that failure to disclose this information will be preserved as evidence of obstruction and concealment in support of a potential federal civil rights action under 42 U.S.C. § 1983 and § 1985. Denial of this motion without a valid legal basis would constitute interference with Petitioner's ability to pursue redress for judicial misconduct and systemic discrimination and will be preserved as evidence that the Court was placed on notice and failed to act in good faith. Any such denial may be construed as an intentional act of concealment, not protected by qualified immunity.

WHEREFORE, Petitioner respectfully requests that the Court:

1. Disclose the names of the judges who ruled on each of the above-referenced orders;

2. Provide this information on or before May 16, 2025, or else identify the specific legal basis for continued withholding of judicial identities; and

3. Preserve all objections and procedural rights for federal review under 42 U.S.C. §§ 1983 and 1985 in the event of noncompliance.

Respectfully submitted this 12th day of May, 2025.

_____
Charity Mainville
Plaintiff–Petitioner, Pro Se
2025 Watchorn St, Apt 504
Durham, NC 27703
(608) 215-6654
camainville@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this Motion to Identify Judicial Panel Pursuant

To N.C. Public Records Law was also served on David Yopp via email to

dmyopp@hatchlittlebunn.com.

This the 12th day of May, 2025.

Charity Mainville
Plaintiff–Petitioner, Pro Se
2025 Watchorn St, Apt 504
Durham, NC 27703
(608) 215-6654
camainville@gmail.com



**EXHIBIT C**

**EUGENE H. SOAR, Clerk**
Court of Appeals Building
One West Morgan Street
Raleigh, NC 27601

Phone: (919) 831-3600
Web: https://www.nccourts.gov

Mailing Address:
P. O. Box 2779
Raleigh, NC 27602

From Wake
( 24CV022933-910 )

No. P25-113

**CHARITY MAINVILLE**

v.

**ANNA DE SANTIS AND DESANTIS RENTALS, LLC**

## O R D E R

The following order was entered:

The motion filed in this cause on the 12th of May 2025 and designated 'Motion to Identify Judicial Panel Pursuant to N.C. Public Records Law' is dismissed.

By order of the Court, sitting as a three-judge panel, this the 14th of May 2025.

WITNESS my hand and official seal this the 14th day of May 2025.

Eugene H. Soar
Clerk, North Carolina Court of Appeals

Copy to:
Ms. Charity A. Mainville, For Mainville, Charity Anna - (By Email)
Mr. David M. Yopp, Attorney at Law, For De Santis, Anna and De Santis Rentals, LLC - (By Email)
Hon. Vartan A. Davidian, III, District Court Judge, For Davidian, Vartan A. III - (By Email)
The Honorable Clerk of District Court, Wake County

FILED
DATE:May 12, 2025
TIME:9:33:35 AM
WAKE COUNTY
CLERK OF SUPERIOR COURT
BY: E. Bollers

**EXHIBIT D**

NORTH CAROLINA

WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE
DISTRICT COURT DIVISION
24CV022933-910

| | | |
|---|---|---|
| CHARITY MAINVILLE,<br>    Plaintiff | ) | |
| | ) | |
| | ) | |
|         vs. | ) | **ORDER** |
| | ) | |
| ANNA DE SANTIS and. | ) | |
| DE SANTIS RENTALS, LLC., | ) | |
|     Defendant | ) | |

      The functions of the judge in the settlement of the record on appeal are to determine whether a statement permitted by these rules is not factually accurate, to settle narrations of proceedings under Rule 9(c)(1), and to determine whether the record accurately reflects material filed, served, submitted for consideration, admitted, or made the subject of an offer of proof, but not to decide whether material desired in the record by either party is relevant to the issues on appeal, on-duplicative, or otherwise suited for inclusion in the record on appeal.

      Plaintiff has appealed seven orders in this case to the NC Court of Appeals. None of the Orders were judgments. The Court of Appeals did direct the parties to proceed with settling the record on appeal under the process contained in Appellate Rule 11C. As the parties did not come to an agreement as to what would go into the record, Defendant requested the Court to hear from both parties. The judge sent notice to Defendant's counsel and Plaintiff, as she is pro se, setting a place and time for parties to be heard regarding the settlement of the record. The Plaintiff objected to the setting of the settlement the record on appeal.

### FINDINGS OF FACT:

1. The court held the hearing to address the record settlement on Monday April 28, 2025 using the process contained in Appellate Rule 11C.

2. The parties did not agree upon what would be entered into the record.

3. The defendant objected to the plaintiff's request to insert 23 exhibits into the record pursuant to Rule 9d. The basis of the objection was that the exhibits are documents that have not been filed, served, or submitted for consideration, admitted, or made the subject of an offer of proof at the district trial level which is required by Rule 9d. The Plaintiff wanted those

23

documents to part of the record.

4. The defendant also objected to Plaintiff's use of the term Ex Parte regarding some hearings as it was not accurate and was misleading wording in the the record.

5. The defendant's objected to any use of the Latin term Ex Parte on page one of the proposed record.

6. The Plaintiff had notice of every hearing and was present for all hearings, either in person or via Webex.

7. The plaintiff had notice of all motions related to the orders on appeal. In fact, plaintiff objected to most or all of these motions.

8. The essence of the Ex Parte proceeding is that the court moves forward without notice or input from the non-giving party. That did not happen here. Any reference to Ex Parte orders purportedly entered in this action is incorrect and inappropriate.

9. Some of the documents that have been provided may not be necessary for this appeal but they were not objected to so they will remain in the record.

Based upon the foregoing Findings of Fact and Conclusion of Law, the Court orders, adjudges, and decrees as follows:

Plaintiffs request for supplemental documents pursuant to Rule 9 are removed from the record. Any use of the term "ex parte" language in the record is stricken.

5/12/2025 9:18:57 AM

This the 12th day of May, 2025.

Margaret Eagles
Chief District Court Judge

24