IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
No. 1:25-cv-417



| | |
|---|---|
| Charity Mainville, <br>     Plaintiff, <br><br> v. <br><br> Eugene Soar, David Yopp, Margaret Eagles, Christine Walczyk, Vartan Davidian III, John Does 1-3, <br>     Defendants | **SUPPLEMENT TO PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT UNDER RULE 59(e)** |

    Plaintiff Charity Mainville, pursuant to Fed. R. Civ. P. 59(e), submits this supplement to her pending Motion to Alter or Amend Judgment, filed May 28, 2025 (Doc. 9). Since the filing, material facts and circumstances have changed or emerged, warranting the Court's immediate attention and action.

    As of the date of this filing, ten days have passed since Plaintiff submitted her Rule 59(e) motion. Under Rule 59(e), the Court is required to rule on the motion; it cannot defer or ignore a properly filed post-judgment request that seeks reconsideration based on constitutional violations and ongoing procedural harm. The injunctive relief sought remains active and necessary. Plaintiff cannot submit a complete and constitutionally adequate appellate brief while the identity of the judicial actors remains concealed. The delay in ruling has not extinguished the urgency of the relief—it has magnified it. These unresolved issues are compounding existing harm and obstructing Plaintiff's due process rights.

1

## PROCEDURAL CONCERN AND VIOLATION UPDATES

On May 30, 2025, due to the Court's continued failure to rule on the pending Rule 59(e) motion, Plaintiff was forced to file her Record on Appeal under protest. In that filing, she explicitly objected to compliance with judicial orders issued without legal reasoning or authority and demanded that the appellate court accept the record. To Plaintiff's surprise, the record was accepted immediately—after nearly two months of obstruction—without any objection or interference by either the trial court or opposing counsel. Their sudden silence, following weeks of aggressive resistance, confirms that the prior efforts to block the filing were not legally sound but designed to delay and suppress appellate review. This raises serious concerns, particularly because at the time of those delays, Defendants should not have had knowledge of Plaintiff's §1983 claim, further supporting allegations of improper disclosure and inter-court coordination.

Furthermore, since Plaintiff was forced to file the appellate record under protest, this has now triggered a 30-day deadline to submit a brief. Plaintiff cannot file that brief without knowing the full scope of judicial involvement, including the names and roles of the actors involved in issuing and enforcing the disputed orders. The Court's continued delay in ruling on the 59(e) motion—and in disclosing those identities—is materially prejudicing Plaintiff's ability to meet that deadline, obstructing her right to a fair and informed appellate review.

However, this silence soon became more concerning when, on May 23, 2025, at 4:09 PM, the NC Office of Administrative Hearings issued a Final Decision dismissing Plaintiff's petition against the NCHRC. (See Exhibit A) The ruling was not only procedurally improper—it was legally disturbing. It

2

ignored or misrepresented multiple filings, included demonstrably false statements, and attempted to portray Plaintiff as harassing and incompetent. Most critically, it explicitly referenced Plaintiff's unserved federal complaint and ex parte TRO filed in the Eastern District of North Carolina. That same day, Plaintiff voluntarily withdrew that complaint and refiled her case in the Middle District.

Given that the Eastern District complaint was never served and was not part of the administrative record, the only plausible source of this reference is internal disclosure by court personnel—either by the assigned judge or Clerk's Office in the Eastern District. This unauthorized use of a protected ex parte filing in a separate state proceeding constitutes an unlawful breach of process. It not only validates Plaintiff's §1983 claims of institutional collusion, it proves the Eastern District's failure to act caused tangible and irreparable harm.

Plaintiff did not learn of this improper reference until June 3, 2025, after having time to review the Final Decision in full—delayed due to the burden of managing multiple federal filings and appellate deadlines. Upon review, it became clear that the OAH judge not only referenced the unserved federal case but weaponized it to undermine Plaintiff's credibility in a completely unrelated administrative action.

The Tribunal then denied Plaintiff's motion for recusal despite substantial evidence of bias; dismissed her fully-supported, 100+ page motion for summary judgment without analysis; and claimed her court-ordered prehearing statement was invalid—all while doubling down on procedural misconduct. If the Tribunal independently searched for Plaintiff's federal filing, that implicates Fourth Amendment protections against unwarranted

3

surveillance. Either path—disclosure or surveillance—violates Plaintiff's constitutional rights and demonstrates an entrenched pattern of retaliation.

In response, Plaintiff submitted a Rule 59(e) motion to the Tribunal on June 5, 2025 (See Exhibit B) seeking to correct the ruling and formally demanding to know how the Tribunal obtained knowledge of her federal filing. The Tribunal denied the motion, falsely claiming it was untimely despite clear service by mail entitling Plaintiff to a three-day extension under procedural rules, and wrongly stating that Rule 59(e) applies only to matters that went to trial. This denial reflects an evasion of judicial responsibility and further confirms that even good faith efforts by Plaintiff to seek correction through proper channels are dismissed outright, compounding her harm and reinforcing the need for injunctive relief and §1983 oversight.

This Court's continued failure—alongside the Eastern District's inaction—to signal that judicial misconduct will not be tolerated has created a climate where other judicial officers feel emboldened to disregard due process, retaliate against whistleblowers, and undermine constitutional protections. The inclusion of Plaintiff's federal filing in the OAH dismissal—when it had no relevance to the administrative dispute—creates a clear appearance of collusion, especially given that Defendant Eugene Soar's wife is an attorney with the OAH Rules Review Commission. As such, the Tribunal judge will have to be named as a proper defendant in this action, compounding yet another unnecessary burden on Plaintiff—who will be forced to amend her complaint—and on this Court, which will be required to review expanded filings. Her inclusion is not Plaintiff's choice, but a legal necessity—driven by ongoing due process violations and this Court's continued failure to intervene or deter retaliatory conduct by other judicial officers.

4

Plaintiff has since completed proper service of her federal complaint—excluding the previously denied TRO—via county sheriff channels, including personal service to each Defendant's official representative, on June 3, 2025, as it became clear this case could no longer be treated as a protected or ex parte action.

As a result of continued judicial silence, Plaintiff has been forced to invoke her rights as a member of the press. She has worked in press and publishing since 2010 and is actively covering this litigation. Because this matter involves judicial actors acting under color of state law, the First Amendment prohibits the Court from withholding the names of those who influenced or authored decisions that form the basis of this case. If the Court denies access to these names, it would give rise to an additional independent First Amendment violation and force Plaintiff to name additional state actors to an already burdensome and complex § 1983 claim.

WHEREFORE, Plaintiff respectfully requests an immediate ruling on her pending Motion to Alter or Amend Judgment.

Respectfully submitted this 6th day of June, 2025.

Charity Mainville
Plaintiff, Pro Se
2025 Watchorn St, Apt 504
Durham, NC 27703
(608) 215-6654
camainville@gmail.com

5