Exhibit B

Exhibit B

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE OFFICE OF<br>ADMINISTRATIVE HEARINGS |
| COUNTY OF WAKE | 25 HRC 00824 |

Charity Mainville,
    Petitioner,

v.

North Carolina Human Relations Commission
    Respondent.

**PETITIONER'S RULE 59(E) MOTION TO ALTER OR AMEND FINAL DECISION**

NOW COMES Petitioner, pursuant to Rule 59(e) of the North Carolina Rules of Civil Procedure, and respectfully moves the Tribunal to alter or amend the Final Decision entered on May 23, 2025. This motion is timely filed based on the certificate of service by mail and is submitted to correct clear errors of law, strike improper and prejudicial findings, and address substantial due process violations that undermine the legitimacy of the Tribunal's ruling.

This motion is filed to preserve the integrity of the record, to call out procedural misconduct cloaked as adjudication, and to place on notice all actors who may seek to weaponize administrative authority against civil rights claimants engaged in protected petitioning activity. Petitioner asserts that the Final Decision:

1. Mischaracterized the nature of her legal claims;

2. Omitted factual procedural history in a manner that shields the Tribunal from accountability for prior misconduct;

3. Relied on misapplied doctrines of sovereign immunity to evade review;

4. Introduced retaliatory and factually unsupported language into the findings;

①

5. Cited inaccurate, extra-record material from unrelated and unserved federal litigation; and

6. Reflects evidence of improper judicial coordination across venues or potential surveillance of Petitioner's protected legal activity, implicating not only her First and Fourteenth Amendment rights, but potentially her Fourth Amendment right to be free from unreasonable governmental intrusion into private legal action.

In addition to violating Petitioner's constitutional rights, these errors also constitute clear violations of her rights under the North Carolina Administrative Procedure Act, including the right to a fair hearing, an impartial adjudicator, and a decision based on the record—not retaliatory commentary.

Petitioner will not appeal this ruling through North Carolina's judicial hierarchy. This Final Decision has no place in any tribunal. This ruling demonstrates not judicial independence, but a profound lack of competence in the application of law, a misuse of administrative authority, and an effort to discredit a pro se civil rights litigant rather than adjudicate her claims on the merits.

For a Tribunal to weaponize its findings against a disabled Petitioner rather than address documented procedural violations is not merely grounds for recusal—it raises serious questions about judicial fitness. However, in an effort to protect not just the record, but justice itself, Petitioner seeks to correct that record here. Out of good faith, Petitioner affords this Tribunal one final opportunity to lead with legality and integrity—not retaliation—and the choice it makes will define its legacy.



## PROCEDURAL HISTORY AND GROUNDS

1. **The Tribunal's "Findings of Fact" Are Legally Deficient and Not Findings of Fact**

   A finding of fact, also known as a conclusion of fact, refers to a determination made by the trier of fact regarding a factual issue based on evidence presented in a case. Under North Carolina law, findings of fact must be based exclusively on the evidence of record and supported by substantial admissible evidence. See N.C. Gen. Stat. §§ 150B-34(a), 150B-42(a). Findings cannot be legal conclusions, summaries of unrelated litigation, or character-based commentary. They must reflect objective determinations from the record, not narrative framing.

   The Tribunal's Final Decision failed to meet this standard. It included nineteen numbered statements under the heading "Findings of Fact," most of which were not based on admissible evidence and not submitted by either party. Notably, Finding of Fact #19 purports to take "Official Notice" of thirteen separate procedural entries from Petitioner's unrelated state and federal court matters, none of which were cited by Respondent, entered into evidence, or the subject of a hearing.

   This is a direct violation of N.C. Gen. Stat. § 150B-41(d), which permits official notice only if:

   a. The source of the noticed fact is disclosed;
   b. The noticed material consists of facts subject to judicial notice or within the specialized knowledge of the agency; and
   c. The party is given an opportunity to dispute the fact through submission of evidence or argument.

③

Here, the Tribunal failed to identify any source other than referencing case numbers and did not provide Petitioner any opportunity to dispute the so-called "facts" noticed. These were not adjudicative facts—they were procedural histories lifted from other venues and framed in a way that suggested impropriety, burden, or excessiveness. This was done without foundation, hearing, or relevance to the legal issue at hand: whether the North Carolina Human Relations Commission complied with its statutory obligations.

If the Tribunal wishes to argue that these filings were noticed under § 150B-41(d), it must explain how it discovered them, why they were relevant, and why Petitioner was not informed and allowed to respond. These materials were never introduced by Respondent and have no basis in the administrative record unless the Tribunal is conceding they serve as evidence of the very retaliation Petitioner has spent the past 11 months trying to expose.

These were not "findings of fact." They were editorial accusations, procedural distortions, and retaliatory insinuations that violate the most basic principles of due process under state and federal law.

2. **Correction of Procedural History Masked as "Findings of Fact"**

   **FOF #1 and #2** cited procedural history from March 6 and March 17, but failed to mention that on March 13, pursuant to 26 NCAC 3 .0104, the undersigned Administrative Law Judge issued an Order requiring a Prehearing Statement. This order was mailed to a misspelled street address and never properly received. Petitioner only discovered the case was accepted after signing up for electronic filing.



Ex. B

**FOF #3** stated that the Document of Agency Action (or "Right to Sue Letter") set out the evidence and findings of the HRC. This is a misstatement. The Determination letter contained only conclusory findings—no actual evidence was attached or disclosed. Furthermore, the Tribunal's reference to Petitioner's right to file a civil action conflates two distinct legal rights and improperly implies that this right negated the need for a proper investigation. It does not. The right to sue is separate and does not relieve the agency of its investigative obligations under state and federal law.

**FOF #4** asserted it was unnecessary to discuss the HRC's evidence and findings because Petitioner did not appeal them. This reflects a fundamental misunderstanding of the nature of this proceeding. This is not an appeal of a housing discrimination case—it is a petition challenging the adequacy and legality of the HRC's investigation under the Fair Housing Act and related state law. The Tribunal had a duty to evaluate whether the HRC's findings were supported by a proper investigation conducted in accordance with legal standards—not to sidestep review by mischaracterizing the scope of the petition. FOF #16 later contradicts this position by claiming that Petitioner improperly attempted to "appeal" the case through her Motion for Summary Judgment. That inconsistency highlights both a factual error and a willful evasion of the legal questions properly before the Tribunal.

**FOF #5** raised sovereign immunity without addressing Petitioner's detailed opposition or acknowledging that Petitioner did not sue the NCHRC or seek monetary damages. Petitioner sought administrative review of agency misconduct—relief that clearly falls within the jurisdiction of the OAH. The Tribunal failed to mention or engage with Petitioner's response to the Motion to Dismiss, which laid out specific arguments



explaining why sovereign immunity does not apply to the NCHRC in this context. Moreover, the Tribunal ignored the supporting case law included in Petitioner's Motion for Summary Judgment that directly distinguishes investigatory misconduct from immunity-protected actions. This omission reflects either a fundamental misunderstanding of the Tribunal's role or a deliberate effort to avoid addressing the merits of the claim.

**FOF #6** states: "Soon after, consistent with 26 NCAC 03 .0115, the Tribunal issued an Order for Petitioner to Respond to Respondent's Motion to Dismiss on or before March 28, 2025, by 5:00 p.m." The phrase "soon after" is misleading—it was the very same day. The Tribunal issued that order on March 17, 2025, giving only a 10-day response time. This reflects a pattern by the Tribunal issuing swift orders on filings.

**FOF #7** omits that the Tribunal issued an order the very next day, March 18, 2025, granting Respondent 21 days to respond—giving the Attorney General an extra 11 days to reply. That same order also required a memorandum of law that indicated a lengthy response to justify the extra time given.

**FOF #8** states: "In her Prehearing Statement ('PHS'), filed March 21, 2024, Petitioner attempted to expand her complaint…" The use of the word "attempted" is inappropriate and condescending. It implies Petitioner's arguments were unfounded when, in fact, they were grounded in law and pointed to the HRC's failure to meet federal equivalency standards required under HUD regulations. This is also where the Tribunal includes Footnote 1, stating: *"It is noted that a Petitioner's prehearing statement is not part of the complaint—unless filed as part of an Amended Petition. Petitioner failed to do so."* This statement is a gross misrepresentation. There is no rule in the North Carolina



Ex. B

Administrative Code requiring a prehearing statement to be filed as an amended petition. The Tribunal's assertion is not grounded in law and appears to be a manufactured excuse to disregard Petitioner's legal arguments and facts. This is especially troubling considering she issued the order for the prehearing statement and intentionally omitted it from the so-called "Findings of Fact."

**FOF #10** is inaccurate. The response was not verified and did not include a memorandum of law as required by the Tribunal's own Order.

**FOF #11** fails to mention the grounds for that motion. Petitioner moved to strike because the affidavit was irrelevant, prejudicial, and consisted entirely of hearsay.

**FOF #12** again reflects the Tribunal's pattern of swift action, ruling within 24 hours, but omits that no party requested a hearing. The Tribunal gave no reasonable grounds to schedule one, and no motion for a hearing had been filed.

**FOF #13** is misleading. Respondent had already responded to the original motion and was not required to file a new one unless directed by the Tribunal—which it was not. This FOF also omits the substance of Petitioner's motion, which pointed out false statements made by the Tribunal and DOJ, violations of the rules of evidence, and objected to the scheduling of a hearing without legal basis.

**FOF #14** states: "*However, on April 10, 2024, Petitioner filed a 'Notice Regarding Unreasonable Delay in Ruling and Request for Immediate Action.' Therein, Petitioner erroneously asserts 'the Tribunal's refusal to rule—despite having ample opportunity—now functions as a de facto denial of due process...'*" This was not an erroneous assertion. It was a valid observation supported by the very pattern established in the Tribunal's own rulings. The Tribunal had repeatedly ruled on matters within 24



Ex. B

hours. The delay in this instance was inconsistent with that pattern and occurred after Petitioner challenged bias—underscoring the due process concern. The justification for this Notice is validated by the Tribunal's own action in FOF #15.

**FOF #15** states: "*Later that same day, the Tribunal issued its Order Denying Petitioner's Motion for Reconsideration & Granting Petitioner's Motion to Cancel the April 16, 2025 Hearing on Respondent's Motion to Dismiss. That Order further advised the Parties the Tribunal would issue a final decision in the matter—as requested by Petitioner—within forty-five (45) days of the Order.*" This directly contradicts the Tribunal's own assertion in FOF #14. If Petitioner had been premature in asserting unreasonable delay, the Tribunal would not have issued a same-day ruling. Instead, it would have corrected Petitioner's "misunderstanding" or stated the matter was still under response deadline. Furthermore, Petitioner did not request a 45-day timeline. She requested that the motion be reviewed and ruled upon rather than holding a hearing. The 45-day reference was unilaterally imposed by the Tribunal and does not reflect Petitioner's request.

**FOF #16** clearly shows the Tribunal did not properly review Petitioner's Motion for Summary Judgment. Referring to "emails and such" diminishes the scope and content of a filing that contained nearly ninety (90) pages of meticulously documented evidence. This was not about an "underlying housing issue"—the complaint involved allegations of discrimination and retaliation under the Fair Housing Act, constituting civil rights violations against a person with disabilities. The Tribunal's minimization of this as a mere housing dispute reflects gross incompetence and a failure to understand the legal issues raised. The Motion for Summary Judgment demonstrated not only investigative



Ex. B

failures but also directly refuted the Determination's legal basis under HUD and NCHRC standards. It also presented grounds that rendered the Motion to Dismiss moot—yet none of that was addressed.

**FOF #17** attempts to undermine Petitioner's April 24, 2025 filing titled "Notice of Federal Filing and Procedural Delay." This filing explicitly stated that a federal complaint had been filed based on the same set of facts NCHRC failed to investigate. It also made clear that jurisdiction remained with the Tribunal and urged timely resolution to avoid further harm in concurrent proceedings. The Tribunal's attempt to critique Petitioner for not attaching her federal complaint is irrelevant and improper—Petitioner was under no obligation to do so. The Tribunal has no jurisdiction over that federal action and has repeatedly failed to even rule on the matters within its own. The inclusion of this FOF confirms that Petitioner's warnings of harm were valid and ignored.

**FOF #18** refers to Petitioner's May 5, 2025 "Motion to Compel Entry of Order or, in the alternative, Motion for Recusal," stating Petitioner "misguidedly asserts" that 20 days had passed without a ruling. There was nothing misguided about it—no action was taken, no response was ordered, and no justification was given for the delay. Every previous motion in the case received swift treatment—until Petitioner challenged the Tribunal's impartiality and raised concerns of retaliation. This inaction, combined with the Tribunal's prior behavior, fully supports the appearance of bias and procedural irregularity.

3. **Improper Use and Misstatements of Judicial Record**

**FOF #19** lays out a gross misrepresentation of Petitioner's parallel litigation history—records that have no legal bearing on this administrative matter and serve only


(9)

Ex. B

to discredit Petitioner by suggesting excessiveness or bad faith. In reality, these filings reflect the extent of harm endured and the necessity of pursuing multiple forms of redress. If there were a mechanism to sanction this Tribunal for such an inappropriate and frankly embarrassing summary, Petitioner would not hesitate to pursue it.

Furthermore, it should be noted that the opposing party in Petitioner's district court matter has filed motions to dismiss three separate times—which has been denied. This fact alone contradicts the Tribunal's attempt to paint Petitioner's litigation as meritless. Petitioner will not waste time arguing her entire case here. However, for the sake of correcting the public record and exposing the inadequacies of this Tribunal's so-called "findings," Petitioner offers the following clarifications:

**a)** The original complaint in small claims court included violations of the implied warranty of habitability and covenant of quiet enjoyment, along with claims of misrepresentation.

**b)** The amended complaint did not add new legal claims but clarified the factual allegations. It deliberately excluded any discrimination claims submitted to the NCHRC to avoid duplication of claims across jurisdictions. The amended complaint did not mention discrimination.

**c)** The Tribunal omitted that the City of Raleigh opened an unfit housing case against the landlord, citing 14 code violations. This was not speculative—it was a formal agency action supported by physical inspections and photographic evidence presented to the magistrate.



**e)** Under Rule 15(a) of the North Carolina Rules of Civil Procedure, the court accepted Petitioner's amended complaint. The Tribunal, being licensed in law, should know this rule and should not mischaracterize the filing or the court's acceptance of it.

**f)** Petitioner filed a notice of interlocutory appeal based on the violation of substantial rights—a procedural safeguard also implicated in this Tribunal's own conduct.

**g–i)** These entries are irrelevant and appear to be cherry-picked solely for prejudicial effect. They serve no legal purpose in the disposition of this case.

**j)** The federal denial of emergency relief was not based on merit but on the Anti-Injunction Act. The ruling acknowledged procedural limitations—not a lack of legal merit.

**k)** Petitioner's motion for recusal was directed at a magistrate judge, not a U.S. District Court judge, and is still pending. These are different roles with different scopes of authority—just as this Tribunal is not a judge in a court of law.

**l)** Again, irrelevant and lacking factual or legal basis.

**m)** Another misstatement. Sanctions cannot be issued against a private party. Petitioner's motion was aimed at opposing counsel for knowingly submitting false statements to the North Carolina Supreme Court.

**o)** Vague, conclusory, and prejudicial. It fails to provide the basis or relevance for including those filings, continuing the pattern of distortion to defame Petitioner rather than adjudicate the merits of her administrative claim.

The misuse of this judicial record is not only improper—it confirms the Tribunal's retaliatory posture and intent to paint Petitioner in a negative light without cause or legal necessity.

*BA.B*

4. **Appearance of Improper Judicial Coordination and Institutional Retaliation**

No legal path exists for the ALJ to have known about Petitioner's May 15, 2025 federal filing unless she was improperly notified by actors in the federal judiciary, Wake County District Court, the North Carolina Court of Appeals, or opposing counsel—each of whom was named as a defendant in that suit. The reference in **FOF #19(p)** to Petitioner's federal complaint in case number 5:25-cv-00260-D-KS is deeply troubling. This complaint was never served and was voluntarily withdrawn the same day this ruling was issued. The only individuals with access to that filing would have been the Clerk's Office or the presiding federal judge.

Petitioner had already suspected judicial coordination and withdrew the case out of concern that it had been leaked prior to service. This Final Decision confirms those concerns. There was no public notice of the case, no certificate of service, and no procedural basis for the ALJ to be aware of its contents. Yet the Tribunal cited it anyway—confirming either that she was improperly notified by a named defendant or court official, or she engaged in unlawful surveillance of Petitioner's filings.

This Final Decision has now provided direct evidence of improper judicial coordination in support of Petitioner's 42 U.S.C. § 1983 claim. What was once circumstantial has now been confirmed in writing. The only alternative explanation—that the Tribunal was independently monitoring PACER for filings involving Petitioner— raises serious questions about judicial surveillance and potential violations of the Fourth Amendment. Either scenario constitutes retaliatory conduct and further undermines the integrity of this tribunal.

5. **Reliance on Factually Inaccurate Statements to Justify Dismissal**



Ex. B

**FOF #20** claims that Petitioner had "six venues pending" claims against her landlord, but later refers to five. Both statements are factually incorrect. Petitioner has only two active claims directly involving her landlord: one in state court and one in federal court. The appellate matter, this OAH petition, and the § 1983 claim are not actions against the landlord—they are against judicial actors and an administrative agency that failed to uphold its statutory obligations.

To misstate these facts in an official tribunal ruling is more than sloppy—it is deliberate. It is an attempt to frame Petitioner as litigious rather than acknowledge the pattern of institutional misconduct she has lawfully pursued. This Tribunal, by repeating these mischaracterizations, reinforces the very harm Petitioner has documented: retaliation, bias, and systemic coordination to suppress accountability.

Agencies, courts, and judges exist not to protect each other, but to uphold the rule of law and defend the rights of the people. When they instead collude to preserve their own power and image, they betray the foundational purpose of justice. The decision in this case is not just a legal failure—it is a stain on the integrity of North Carolina's administrative and judicial system.

6. **Use of Retaliatory Language Without Legal Basis**

The Tribunal's use of the term "harassing" to describe Petitioner's actions was made without any legal process—there was no motion for sanctions, no evidentiary hearing, and no findings under Rule 11 or any other procedural mechanism. This language was inserted unilaterally and without foundation, amounting to retaliatory commentary rather than adjudicative fact.

Such language, directed at a known neurodivergent pro se litigant, constitutes textbook First Amendment retaliation. It penalizes Petitioner for exercising her right to petition the government and challenge systemic failures. Rather than engage the legal arguments raised, the Tribunal resorted to defamatory framing intended to discredit and intimidate—a clear abuse of discretion and a discriminatory act that underscores the very bias at issue in this case.

Petitioner believes this was done knowingly, as the Tribunal is fully aware that this decision is meritless. The language appears crafted to stage Petitioner in anticipation of a possible appeal, attempting to stain her credibility rather than defend the ruling on its legal merits.

What the Tribunal failed to recognize is that in doing so, it exceeded its authority, violated core principles of administrative law, and denied Petitioner the due process to which she is entitled. This ruling is not just flawed—it is retaliatory, unlawful, and grounds for civil liability.

## NOTICE OF LEGAL CONSEQUENCES AND PRESERVATION OF RIGHTS

Petitioner submits this motion in good faith, offering the Tribunal one final opportunity to correct course and uphold the law it is sworn to follow. Petitioner is aware that the Tribunal once campaigned on values rooted in service—as a mother, wife, and attorney—and a promise to lead with integrity. If those values still guide her, she must set aside any perceived bias and evaluate this case solely on the merits and the rule of law.

It must also be acknowledged that the way this Tribunal has chosen to depict Petitioner is not only inaccurate but discriminatory. Petitioner is neurodivergent and on the spectrum. What the Tribunal labeled as "bad faith" or "harassing" conduct is, in reality, how Petitioner processes



information and seeks clarity through rigorous analysis. Petitioner possesses a high level of intelligence and a developed understanding of the law—grounded in both lived experience and academic study. To suggest otherwise, or to frame her conduct as vexatious, is to penalize her for the very attributes tied to her disability. That is discrimination. No amount of judicial phrasing can obscure that truth.

Petitioner notes that the ruling contains additional factual inaccuracies and misleading statements not fully addressed in this motion. Due to the undue burden and emotional toll this Tribunal's conduct has imposed, Petitioner cannot rebut each one here. She expressly reserves the right to cite and present those omissions and misstatements as evidence should this Tribunal become a named defendant in her § 1983 action.

Petitioner is not raising the prospect of a § 1983 action to influence this ruling. It is stated as a matter of transparency—so the Tribunal understands the gravity of standing by a decision so deeply flawed and discriminatory. Petitioner has made clear she will not pursue an appeal in a state system that shields itself from accountability. But she will not be silenced. If justice cannot be secured through the mechanisms intended to uphold it, she will lawfully pursue it elsewhere—and the public record will show who honored the law, and who did not.

## REQUEST FOR RELIEF

WHEREFORE, Petitioner respectfully requests the following relief:

1. That the Tribunal strike all inaccurate statements and irrelevant material included in the Final Decision, vacate its dismissal, and reevaluate Petitioner's claims on the legal



Ex. B

merits. A proper decision must be issued within five (5) days[1] due to already delayed actions in violation of N.C. Gen. Stat. § 150B-44.

2. That the Tribunal state on the record how it obtained knowledge of the federal lawsuit filed in the Eastern District of North Carolina (Case No. 5:25-cv-00260-D-KS), including whether this information was provided by another judicial actor or through improper surveillance.

Respectfully submitted this the 5th day of June, 2025.

*/s/ Charity Mainville*

Charity Mainville
Petitioner, Pro Se
2025 Watchorn St, Apt 504
Durham, NC 27703
(608) 215-6654
camainville@gmail.com

---

[1] Petitioner notes that the Tribunal previously cited a 10-day response window for Respondent as an excuse to delay ruling. That excuse is inapplicable here. The Tribunal is under no obligation to request further briefing, and any attempt to solicit or allow additional delay—especially after extensive prior filings—will be viewed as willful coordination with Respondent to perpetuate misconduct and may be included as evidence in Petitioner's pending § 1983 claim.

(16)

Ex. B

## CERTIFICATE OF SERVICE

I hereby certify that I have on this date filed a copy of the foregoing **PETITIONER'S RULE 59(E) MOTION TO ALTER OR AMEND FINAL DECISION** by utilizing the electronic filing system and electronically served a copy to Respondent's attorney of record, Joseph Finarelli.

This the 5th day of June, 2025.

                                                                       _____
Charity Mainville
Petitioner, Pro Se
2025 Watchorn St, Apt 504
Durham, NC 27703
(608) 215-6654
camainville@gmail.com

(17)