IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
No. 1:25-cv-417



)
Charity Mainville, )
    Plaintiff, )
)
)
v. )
)
Eugene Soar, David ) **EMERGENCY MOTION TO COMPEL RULINGS**
Yopp, Margaret Eagles, Christine ) **AND, IN THE ALTERNATIVE, RENEWED**
Walczyk, Vartan Davidian III, ) **MOTION FOR EMERGENCY RELIEF AND**
John Does 1-3, ) **PROCEDURAL PROTECTION**
    Defendants )
)
)

## INTRODUCTION

    Plaintiff Charity Mainville respectfully files this Emergency Motion to Compel Rulings and, in the Alternative, Renewed Motion for Emergency Relief with Incorporated Brief in Support. This filing is necessary due to the Court's continued inaction on critical pending matters, including Plaintiff's Rule 59(e) motion for reconsideration (Doc. 9) and her Rule 72(a) objection to the denial of electronic filing access (Doc. 11). Since those filings, Plaintiff continues to experience retaliation and escalating harm beyond what was outlined in the supplemental filing (Doc. 10), including procedural obstruction, denial of access to judicial transparency, and refusal to accommodate her disability—necessitating urgent relief under Rule 65(b) and the Court's inherent authority.

    The ongoing denial of electronic filing access imposes an undue financial and psychological burden, forcing Plaintiff to repeatedly take time off work, drive two hours to the courthouse, incur unnecessary printing

1

expenses, and manage the destabilizing effects of these stressors. Plaintiff has been diagnosed with Generalized Anxiety Disorder and ADHD, conditions that are significantly worsened by time constraints, procedural uncertainty, and repeated access barriers—none of which have been acknowledged or addressed.

Immediate intervention is required to preserve Plaintiff's appellate rights, prevent further due process violations and access to the court, stop ongoing harm and retaliatory and discriminatory treatment that now includes unlawful fee imposition, violation of Plaintiff's First Amendment right to access court records and report on judicial misconduct as a member of the press through concealment of judicial actors, and restore the Rule of Law in the Middle District of North Carolina.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 23, 2025, Plaintiff refiled her civil rights complaint under 42 U.S.C. §1983 in the Middle District of North Carolina (Docs. 1, 2) and simultaneously moved for an emergency temporary restraining order (Doc. 3). That same day, Plaintiff submitted a Notice to Receive Electronic Notification (Doc. 4) and a Motion for Authorization to File Electronically (Doc. 5). Despite a pending motion to recuse Magistrate Judge Auld in a related case (1:25-cv-302), this case was assigned to the same judicial officers.

On May 27, 2025, Judge William L. Osteen, Jr. denied the TRO without full review of the evidence, mischaracterizing the complaint, and ignoring Plaintiff's explicit request for the names of judicial actors who issued

2

orders without jurisdiction or legal authority—names required for Plaintiff to identify the appropriate parties in her §1983 complaint.

On May 28, 2025, Plaintiff filed a timely Motion to Alter or Amend Judgment under Rule 59(e) (Doc. 9), which remains pending as of the date of this filing. The Court formally noted submission of the motion to Judge Osteen on that same date.

On June 6, 2025, Plaintiff filed a supplemental brief to her 59(e) motion (Doc. 10), notifying the Court of significant factual developments, including evidence that the U.S. District Court for the Eastern District of North Carolina may have improperly disclosed Plaintiff's unserved ex parte TRO to the named parties, or alternatively, that the Administrative Law Judge obtained it in violation of the Fourth Amendment. The ex parte filing and complaint were used against Plaintiff in a pending administrative proceeding as a basis to discredit her and dismiss her petition.

That same day, Magistrate Judge Auld denied Plaintiff's motion to file electronically (Doc. 5) without analysis, citing only prior denials in a separate case. Plaintiff promptly filed a Rule 72(a) objection (Doc. 11) to that denial, as well as a separate objection to Magistrate Auld's assignment to this case (Doc. 12), based on pending recusal concerns that was delayed due to Plaintiff being denied access to electronic filing.

Plaintiff also completed proof of service of the complaint in the official capacity via proper delivery to the designated agent, as permitted by law (Doc. 13). In addition, as of the date of this filing, Plaintiff has received proof of service in the individual capacity on Defendants Eugene Soar and Christine Walczyk by the Wake County Sheriff's Department. Plaintiff is currently awaiting return of service for the remaining defendants from the Wake County Sheriff's Department.

On June 6, 2025, the Court noted that case had been referred to Judge Osteen, but no rulings have issued on the 59(e) motion or Rule 72(a) objection as of the date of this filing.

## ONGOING RETALIATION AND HARM

On June 2, 2025, Plaintiff's Record on Appeal was finally accepted by the North Carolina Court of Appeals after two prior rejections. The filing was made under protest due to procedural coercion. That same day, Plaintiff received an invoice demanding payment of a $250 bond and a $10 docketing fee within 10 days under threat of dismissal, despite the fact that Plaintiff had already paid the $250 bond two months earlier. Plaintiff called the Clerk's Office and spoke directly with Defendant Eugene H. Soar, who reiterated that the $10 must be paid within 10 days or her case would be dismissed.

On June 4, 2025, Plaintiff paid the $10 fee in person but was not issued a receipt.

Fearing the payment might be disavowed, Plaintiff contacted the Clerk's Office again on June 9, 2025, to confirm receipt. The Office eventually acknowledged the payment and issued a delayed receipt. That same afternoon, Plaintiff received a second invoice for $355.25 in printing costs—again stating that failure to pay within 10 days would result in dismissal. Nowhere in the North Carolina Rules of Appellate Procedure is such a consequence authorized. Rule 12(c) merely provides that "[t]he clerk will reproduce and distribute copies of the printed record on appeal as directed by the court, billing the parties pursuant to these rules." No such order directing reproduction was issued in Plaintiff's case, and the printing appears to have been unilaterally initiated by Defendant Eugene Soar—who, as of June 5, 2025,

4

was in receipt of the summons and complaint and aware that Plaintiff was seeking injunctive relief in this matter.

Moreover, the threatening "10-day dismissal" language began appearing on invoices (Exhibit A) only after Plaintiff filed her §1983 complaint in the Eastern District—despite it never being served—suggesting knowledge of the action and intentional retaliation. Plaintiff's research further reveals that record printing practices and payment deadlines vary widely, with numerous cases showing payments accepted well beyond 10 days and no dismissal threats imposed. Plaintiff is prepared to submit these examples to the Court upon request to demonstrate the inconsistent and retaliatory nature of the treatment she has received.

While reviewing governing rules, Appendix F, Plaintiff discovered that North Carolina explicitly waives filing fees for motions in an existing cause. Yet between February and May 2025, Plaintiff was repeatedly charged a $10 fee per motion, paying a total of $90 in unauthorized fees. Further investigation revealed at least 45 instances between January 1, 2024, and June 10, 2025, where the North Carolina Court of Appeals appears to have collected $900 in similar unauthorized fees from litigants—none of which are authorized under the relevant statutes, rules, or the Court's posted fee schedule.

On June 10, 2025, Plaintiff filed a Notice of Retaliatory Fee Imposition, Improper Cost Assessment, and Lack of Judicial Transparency (Exhibit B) under her appellate case number 25-521, as well as a separate Motion for Refund (Exhibit C) in Case No. P25-113 seeking full reimbursement of the $90 in unauthorized fees and identification of any judicial officer who authorized the charges.

Also on June 10, 2025, Plaintiff submitted a formal media inquiry (Exhibit D) through proper administrative channels seeking the names of judges who issued a series of unsigned and unexplained orders in her appellate matter. The inquiry identified the following orders for which judicial authorship remains concealed:

- ORDER dated 04-10-2025 (Motion General)
- ORDER dated 04-10-2025 (Motion General)
- ORDER dated 04-11-2025 (Motion General)
- ORDER dated 04-17-2025 (Writ of Prohibition)
- ORDER dated 04-17-2025 (Motion General)
- ORDER dated 05-05-2025 (Motion General)
- ORDER dated 05-12-2025 (Motion General)
- ORDER dated 05-12-2025 (Motion General)
- ORDER dated 05-14-2025 (Motion General)

Plaintiff received two vague responses from an anonymous media representative deflecting the request without citing any legal authority. When Plaintiff asserted her rights under *News & Observer Publ'g Co. v. Poole*, 330 N.C. 465 (1992), no further response was provided. Plaintiff followed up on June 12, 2025, copying the Director of Communications for the North Carolina Judicial Branch. No acknowledgment or reply was given.

On June 12, 2025, Plaintiff's Motion for Refund was denied (Exhibit E) without any stated basis, legal reasoning, or reference to governing authority—adding yet another order to Plaintiff's request for identification of judicial officers who acted without jurisdiction or lawful authority.

Although Plaintiff seeks renewed emergency relief ex parte pursuant to Rule 65(b), the named Defendants are aware of this action. The federal

6

complaint has been served in both official and individual capacities and explicitly seeks injunctive relief, including disclosure of judicial identities, which is directly related to the relief requested herein. Further, a North Carolina Administrative Law Judge referenced the TRO that was filed in the Eastern District—despite it never being served—indicating that Defendants or associated actors were made aware of the filing through improper channels and have acted in retaliation.

## **LEGAL STANDARD AND ARGUMENT**

Plaintiff incorporates the legal standards previously set forth in her Rule 59(e) motion (Doc. 9), supplemental filing (Doc. 10), and Rule 72(a) objection (Doc. 11). This is not an attempt to circumvent Local Rule 7.3(d) word count limits, but to avoid redundancy in repeating well-established standards that are already before the Court and should have been reviewed in the ordinary course of adjudication.

This motion to compel is not made out of disrespect for the Court, nor does Plaintiff claim entitlement to special treatment. Rather, the motion is submitted to restore procedural integrity and uphold the Rule of Law, which all judicial officers—state and federal—are equally bound to follow. Relief is further grounded in the principles of the Americans with Disabilities Act, which mandates reasonable accommodation in accessing public services, including the courts (42 U.S.C. § 12132), and in Federal Rule of Civil Procedure 1, which provides that all civil actions and proceedings in the United States district courts "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Plaintiff also

7

invokes her rights under 42 U.S.C. §1983, which provides a remedy when a person acting under color of state law deprives another of federally protected rights.

Federal courts in the Fourth Circuit have consistently recognized the role of Rule 59(e) in correcting legal error and preventing manifest injustice. See *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998); *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 121-22 (4th Cir. 2011). The combination of unresolved motions, procedural retaliation, and continuing harm—particularly in the face of documented disability—meets the threshold for intervention under the Court's inherent authority and warrants emergency relief under Rule 65(b), as supplemented by Plaintiff's prior filings.

## UNJUSTIFIED CONCEALMENT OF JUDICIAL IDENTITIES

There is no lawful or logical basis for withholding the names of the judges who issued the appellate orders at issue. This concealment directly violates North Carolina public records law and established precedent. In *News & Observer Publ'g Co. v. Poole*, the North Carolina Supreme Court affirmed that "[p]ublic access to information concerning the operation of the judicial system is essential to the proper functioning of any democratic society." 330 N.C. 465, 484, 412 S.E.2d 7, 18 (1992). No rule of appellate procedure authorizes withholding judicial identities from final rulings—especially those that implicate jurisdiction or affect constitutional rights.

The only justification ever provided was an anonymous email referencing a 2022 press release, later confirmed to have been sent by Defendant Eugene H. Soar. That press release discusses a limited disclosure policy for

8

petitions—not motions—and does not prohibit naming judges once an order is issued. The stated rationale of preventing "judge shopping" has no relevance here, as the rulings have already been entered. As Plaintiff documented in Exhibit B to her TRO (Doc. 3), a more recent article contradicts that justification, noting that the Court of Appeals has disclosed judicial panel names to the press in other cases prior to rulings, further demonstrating that the policy is discretionary and selectively applied.

Moreover, the continued refusal to release these names obstructs Plaintiff's ability to identify the appropriate parties for her §1983 claims and seek redress for judicial misconduct and ongoing constitutional harm. If the orders at issue were lawfully entered under proper jurisdiction and in accordance with the Rule of Law, then the judges involved should stand by their rulings. Concealment raises the inference that the intent is to avoid being named in this §1983 action. But if those judges acted within jurisdiction and legal authority, judicial immunity would apply, and Plaintiff's claims would fail on that basis. Transparency should not be feared unless there is misconduct to conceal.

Plaintiff acknowledges the gravity of the constitutional claims raised in this case and the potential institutional implications for the North Carolina Court of Appeals—including the prospect that the retaliatory and unauthorized actions taken under Clerk Eugene Soar's supervision may call into question the integrity of numerous rulings issued during his clerkship. However, this Court should not bear sole responsibility for addressing what appears to be a systemic breakdown in judicial transparency. Plaintiff intends to refer these matters to the North Carolina Senate Judiciary Committee to request a formal investigation into the Court of Appeals' issuance of unauthorized fees and concealment of judicial actors.

9

The retaliation described not only implicates constitutional and ADA violations but may also extend into protected whistleblower activity, further elevating the urgency and scope of this Court's responsibility to intervene.

### UNLAWFUL FEE IMPOSITION WARRANTING DECLARATORY RELIEF

Plaintiff respectfully requests that the Court declare the $90 in docketing fees imposed for filing motions in her appellate case to be unauthorized and unlawful under 28 U.S.C. §1914. The statute and corresponding federal fee schedule prohibit courts from charging fees for motions filed in an existing cause. These fees were improperly assessed between February and May 2025, and although Plaintiff paid them under protest, her subsequent request for a refund was denied without legal basis or citation to governing authority. The retaliatory nature of the refund denial—particularly following service of this federal complaint—demonstrates not only bad faith but ongoing injury. Plaintiff therefore seeks immediate declaratory relief and refund of the $90 as part of this motion.

### RELIEF REQUESTED

Plaintiff respectfully requests that the Court:
1. Compel a ruling on Plaintiff's pending Rule 59(e) motion (Doc. 9) due to prejudicial delay.
2. Compel a ruling on Plaintiff's Rule 72(a) objection (Doc. 11) regarding denial of CM/ECF access.
3. Grant renewed emergency relief under Rule 65(b) based on ongoing retaliation, new facts, and irreparable harm.

4. Authorize CM/ECF filing access pursuant to Local Rule 5.3(c)(2) and the ADA (42 U.S.C. §12132).
5. Order disclosure of judicial identities involved in rulings cited in Plaintiff's federal and appellate filings.
6. Declare the $90 in motion fees unlawful under 28 U.S.C. §1914 and direct immediate refund.
7. Grant any further relief the Court deems just and proper.

### DECLARATION UNDER 28 U.S.C. §1746

I, Charity Mainville, declare under penalty of perjury that the facts set forth in the foregoing motion and supporting exhibits, including the factual statements concerning retaliatory conduct and administrative actions taken against me, are true and correct to the best of my knowledge.

### CERTIFICATE OF WORD COUNT

I certify that this filing contains 2744 words, as determined by the word processing software used, and complies with Local Rule 7.3(d).

Respectfully submitted and executed, this the 13th day of June, 2025.

Charity Mainville<br>
Plaintiff, Pro Se<br>
2025 Watchorn St, Apt 504<br>
Durham, NC 27703<br>
(608)215-6654<br>
camainville@gmail.com

## CERTIFICATE OF SERVICE

Pursuant to Rule 65(b), this motion includes an ex parte request for emergency relief. No defendant has appeared. Service of the summons and complaint is currently in progress, and this motion does not assert new claims requiring additional service under Rule 5(a)(2).

This the 13th day of June, 2025.

                                                Charity Mainville
                                                Plaintiff, Pro Se
                                2025 Watchorn St, Apt 504
                                        Durham, NC 27703
                                                  (608)215-6654
                                          camainville@gmail.com